8          UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Ronniesa Tolefree,                          No. 2:19-cv-00693-KJM-AC

12                 Plaintiff,                     ORDER

13          v.

14   Swift Transportation Co. Inc., et al.,

15                 Defendants.

16

17          Swift Transportation Co., Inc. and its parent company, who are together the defendants in

18   this employment discrimination action, move for summary judgment.  Mot., ECF No. 15; Mem.,

19   ECF No. 15-1.  Plaintiff Ronniesa Tolefree opposes the motion, ECF No. 24, and Swift has

20   replied, ECF No. 25.  On August 14, 2020, the court heard oral argument on the motion by

21   videoconference.  Jasmine Duel appeared for Ms. Tolefree and Alicia Kennon for Swift.

22          Several factual disputes remain unresolved, chief among them whether Ms. Tolefree could

23   perform the essential duties of her position as a truck driver while she was pregnant.  A trial is

24   necessary to resolve these disputes.  Ms. Tolefree has not, however, cited clear and convincing

25   evidence of "oppression, fraud, or malice," as is required for her claim of punitive damages.

26   Swift's motion for summary judgment is thus **granted in part and denied in part**.

27   /////

28   /////

# I. EVIDENTIARY DISPUTES

Several disputes about what evidence the court should consider are best resolved at the outset. Those disputes fall into two categories: (A) whether Ms. Tolefree did not properly disclose the evidence she now relies on in opposing Swift's motion, and (B) whether that evidence is admissible.

## A. Disclosure

Swift first argues Ms. Tolefree's declaration, which she submitted with her opposition, does not comply with 28 U.S.C. § 1746. That section requires unsworn declarations to be signed under penalty of perjury. *See* Reply at 2. Although Ms. Tolefree did not originally sign her declaration under penalty of perjury, she has since amended her declaration to comply with § 1746. ECF No. 28. This order refers to the amended declaration, mooting Swift's objection.

Swift next argues Ms. Tolefree has not complied with this District's local rules on the submission of evidence at summary judgment, and it urges the court to disregard her filing for this reason. *See* Reply at 9–10. The local rules require a party who moves for summary judgment to produce a "Statement of Undisputed Facts." E.D. Cal. L.R. 260(a). That statement must list the facts the party claims are undisputed and the evidence supporting those claims. *See id.* Swift filed a statement under that rule. *See* Defs.' Stmt., ECF No. 15-2. A party who opposes summary judgment must then file a responsive statement. E.D. Cal. L.R. 260(b). The responsive statement must "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed." *Id.* The opposing party may also file its own statement of undisputed facts, but that additional submission must be "concise." *Id.* Ms. Tolefree complied with these rules. She submitted responses to each fact Swift proposed as undisputed, agreeing some were undisputed and contending others were disputed, citing evidence to support her claims. *See* Pl.'s Stmt. at 1–34, ECF No. 24-2. She also added several claims of undisputed facts and cited evidence to support those additional claims. *See id.* at 35–64. Although her list is not especially "concise," Swift is mistaken in claiming she violated the local rules. Disregarding her filing would be draconian and the court declines to enforce the local rules as Swift requests.

Finally, Swift asks the court to strike two declarations by witnesses Ms. Tolefree did not disclose before opposing summary judgment: Peter Rose, her former supervisor at another company, ECF No. 24-5; and Desiree Wood, a veteran truck driver and president of REAL Women in Trucking, Inc., an organization that offers support to and advocates on behalf of women in the trucking industry, ECF No. 24-6; *see also* Evid. Objs. at 6, 8, ECF No. 25-3. "Rule 26(a)(1)(A) requires a plaintiff to make certain initial disclosures to the defendant 'without awaiting a discovery request.'" *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1245 (9th Cir. 2012) (quotation marks omitted). Disclosures required by Rule 26 include "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). A party must also disclose its testifying experts. *See* Fed. R. Civ. P. 26(a)(2)(A). These disclosures must be amended if they are "incomplete or incorrect" in some "material respect." Fed. R. Civ. P. 26(e)(1)(A). If a party does not comply with these rules, that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court can also impose lesser sanctions. *See* Fed. R. Civ. P. 37(c)(1)(A)–(C); *R&R Sails*, 673 F.3d at 1247.

Here, according to Swift, Ms. Tolefree's initial disclosures did not mention Mr. Rose or Ms. Wood.[1] Nor did she amend her disclosures before submitting their declarations in opposition to Swift's motion. *See* Evid. Objs. at 6, 8. But after Swift's motion was submitted, the parties agreed to extend discovery to allow for depositions of Mr. Rose and Ms. Wood, and they agreed Swift could have more time to engage an expert to rebut Ms. Wood's opinions. *See* Stip. & Order, ECF No. 32. The scheduling order was amended accordingly. *See id.* These extensions made the previous nondisclosure harmless, so no sanction is justified.

/////

---

[1] Swift did not submit a copy of those initial disclosures. The court assumes counsel's compliance with the requirements of Rule 11 in asserting nondisclosure.

## B.  Admissibility

Swift's remaining objections rely on the Federal Rules of Evidence.  The judges in this district, including the undersigned, have often cautioned litigants against terse and reflexive evidentiary objections at summary judgment, especially when the objector is the moving party. *See, e.g.*, *Lindell v. Synthes USA*, 155 F. Supp. 3d 1068, 1071 (E.D. Cal. 2016); *U.S. E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052–53 (E.D. Cal. 2015); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Defense counsel is encouraged to review these orders to avoid unnecessary and unpersuasive objections in the future.

Generally, the admissibility of evidence at summary judgment is governed by different rules and different motivations than at trial.  At summary judgment, Rule 56 allows objections to evidence when "the material cited . . . cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  As this language suggests, at summary judgment, the propriety of evidence depends not on its form, but on its content. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001).  The party asking the court to consider evidence bears the burden to prove that it could be presented in admissible form. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects, the proponent must direct the court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).  But if evidence falls short of the "formalities of Rule 56," a district court may nonetheless exercise its discretion "to be somewhat lenient." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993).

This standard makes some evidentiary objections a poor fit for summary judgment.  That is true first and foremost of form objections and objections based on relevance, vagueness and speculation.  To the extent these objections attack the content of evidence rather than its form, they duplicate Rule 56 itself.  Courts disregard irrelevant, indecipherable or speculative evidence,

*see, e.g.*, *Burch*, 433 F. Supp. 2d at 1119, and Rule 56 does not permit litigants to oppose summary judgment on the basis of vague assertions or speculation, *see* Fed. R. Civ. P. 56(c)(1). Likewise, an objection that testimony is argumentative or mischaracterizes the record either calls for a credibility determination unsuited for summary judgment or would better be directed at the underlying evidence itself. *See, e.g.*, *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1034 (C.D. Cal. 2013). Hearsay objections have also often been overruled at summary judgment. For example, on review of summary judgment, the Ninth Circuit has considered the hearsay contents of a diary whose substance would have been admissible in another form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). Foundation and authenticity problems are similarly nonfatal if "the substance could conceivably be made admissible at trial." *Portnoy v. City of Davis*, 663 F. Supp. 2d 949, 953 (E.D. Cal. 2009) (quotation marks omitted).

Many of Swift's evidentiary objections fall into these categories. It objects that the declarations submitted with Ms. Tolefree's opposition include irrelevant and vague claims, *see* Evid. Objs. at 4, 5, 7, lack foundation, *see id.* at 4, 7–8, and are hearsay, *see id.* at 4. Some of Swift's objections are wholly unsupported by argument or citations. *See, e.g.*, *id.* at 4 (objecting to entirety of Ms. Tolefree's declaration as "lack[ing] sufficient detailed facts backed by supporting evidence"); *id.* (objecting without explanation that several paragraphs of Ms. Tolefree's declaration contain hearsay); *id.* at 7 (objecting to entire declaration of Peter Rose because it "contains inadmissible hearsay").

These objections are overruled. Because this order rests on only relevant and concrete evidence, Swift's objections to irrelevance, vagueness and speculation are moot. The court will not attempt to fill in the legal arguments and citations that Swift has omitted, such as by surmising what "detailed facts" or "supporting evidence" Swift thinks are missing from Ms. Tolefree's declaration. *See* Evid. Objs. at 4. Nor will the court attempt to discern the justifications for Swift's hearsay objections. Most of the statements in question are not hearsay in any event. For example, many would not be offered to establish their truth, but rather some other fact, such as notice. *See, e.g.*, Tolefree Decl. ¶ 7 ("I spoke to my Swift fleet manager . . . and informed her about my pregnancy."); *cf.* Fed. R. Evid. 801(c)(2) (statement is hearsay only if

offered "to prove the truth of the matter asserted in the statement"). Other statements would be admissible as those of a party opponent. *See, e.g.*, Tolefree Decl. ¶ 15 ("[A Swift employee] told me that I was required to immediately turn in my truck keys . . . ."); *cf.* Fed. R. Evid. 801(d)(2) (excluding from hearsay statements of party opponent). Still others could be reduced to admissible form at trial, for example by calling the declarant as a witness. *See, e.g.*, Tolefree Decl. ¶ 11 ("[My doctor] took no issue with my ability to work as a commercial truck driver . . . .").

Some of Swift's objections do require closer consideration. The first of these is Swift's objection that Ms. Tolefree's declaration is self-serving and conclusory. A declaration is not objectionable simply because it is self-serving. *See United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). A party has little reason to submit evidence that does not serve its purposes. *See id.* And although a party cannot force its way to a trial with conclusory assertions, factual claims may indeed defeat a motion for summary judgment even if they are self-serving and uncorroborated. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015). Rejecting a claim merely because it is uncorroborated would amount to an assessment of the declarant's credibility, and courts do not decide whether claims are credible at summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A declaration may be disregarded only if it asserts conclusions rather than facts. *Nigro*, 784 F.3d at 498. Here, as was true of the declaration in *Nigro*, Ms. Tolefree's declaration is "based on personal knowledge, legally relevant, and internally consistent." *Id.* It describes her work history, her perceptions of her job duties, her understanding of her medical restrictions and her resignation. She may rely on it in opposition to Swift's motion.

Swift next objects that Ms. Tolefree's and Mr. Rose's declarations include several assertions not based on their personal knowledge. *See* Evid. Objs. at 4–5, 7. Swift is correct that witnesses may testify only about matters within their personal knowledge. *See* Fed. R. Evid. 602. Witnesses have "personal knowledge" about events they have perceived through their physical senses or about opinions rationally based on personal observation and experience. *United States*
/////

*v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006); *United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991).

Opinions by witnesses who, like Ms. Tolefree and Mr. Rose, do not claim an expertise, are subject to the further requirements of Rule 701. Under that rule, opinions must be "rationally based" on the person's perceptions and "helpful" to the trier of fact, and they must not rely on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. An opinion is "rationally based" on a witness's perceptions if it is one a normal person would form on the basis of the observed facts. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence § 701.03[2] (2d ed. 2014). Nonexpert opinions are "helpful" if they assist a trier of fact to clearly understand the witness's testimony or to determine a fact in issue. Fed. R. Evid. 701(b). Nonexpert testimony is unhelpful and thus inadmissible if it is mere speculation, expresses an opinion of law or if it usurps the jury's function. Weinstein, *supra*, § 701.03[3]; *see also, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060–61 (9th Cir. 2008) (nonexpert witnesses may not tell finder of fact what result to reach); *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) (speculative testimony inadmissible); *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) (legal conclusions inadmissible when presented as lay testimony).

Swift's objections to Ms. Tolefree's declaration focus on her description of her job duties and her doctor's advice about what to do and what not to do during her pregnancy. *See* Evid. Objs. at 4–5 (citing Tolefree Decl. ¶¶ 4, 9, 10, 12, 13, 14, 19, 29, 30). These objections are overruled. Ms. Tolefree knows first-hand what she did and did not do on the job. She can also testify about her understanding of her doctor's advice and restrictions. The same is true of her opinions about the practical requirements of her job as a truck driver, in contrast to any paper requirements Swift cites. These are opinions she has formed based on what she has seen and done. They would also be helpful to a factfinder tasked with deciding whether Ms. Tolefree could fulfill the essential duties of her job, as a jury would do here. These opinions are not based on any scientific or technical knowledge. Normal people form opinions about what their job duties are. Swift's disagreement with Ms. Tolefree's opinions undercuts none of these conclusions. It shows simply that Swift and Ms. Tolefree have different things to say about what

1    her job duties were.  Deciding who is right is for the factfinder.  *See infra* section V.A.

2         Swift makes similar objections to Mr. Rose's declaration.  Mr. Rose describes what Ms.

3    Tolefree's job duties were when she worked as a truck driver under his supervision before she

4    began working for Swift.  *See, e.g.*, Rose Decl. ¶¶ 6–11.  Swift argues his declaration is

5    inadmissible on the whole because he did not work for Swift and does not know what Swift

6    requires of its truck drivers.  *See* Evid. Objs. at 7.  Although Swift explains this objection by

7    arguing Mr. Rose has no personal knowledge of Ms. Tolefree's job duties at Swift, its objection is

8    better understood as an attack on the relevance of Mr. Rose's personal knowledge.  That attack

9    boils down to a disagreement with the position of Ms. Tolefree and Mr. Rose that her work with

10   him was comparable to her duties at Swift.  According to Ms. Tolefree, her work with Mr. Rose

11   was identical to her work for Swift.  She fulfilled deliveries under the same contract for the same

12   client and drove the same route.  *See* Tolefree Decl. ¶¶ 8–9.  For that reason, if her testimony is

13   believed, Mr. Rose's description of her job duties from her time with him is relevant and

14   admissible because he knows first-hand what those duties were.  The same is true of his opinions

15   about her ability to perform those duties.  *See* Rose Decl. ¶ 11.  An ordinary person in his

16   situation could form an opinion about whether someone with Ms. Tolefree's medical restrictions

17   could do her job.  This opinion would be helpful to a factfinder.  It is not a legal opinion.  Nor

18   does it tell the jury what result to reach.  And it would remain for the jury to decide whether her

19   duties changed after she began working for Swift.  Swift's objections to Mr. Rose's declaration

20   are thus overruled.

21        Swift's remaining objections challenge Ms. Wood's declaration under evidentiary rules

22   that apply to opinions by experts.[2]  *See* Evid. Objs. at 9–10 (citing Fed. R. Evid. 702).  Although

23   Swift seeks the exclusion of Ms. Wood's declaration in its entirety, not all of her declaration

24   expresses opinions, let alone opinions based on expertise.  Some of it summarizes her first-hand

---

[2] Ms. Wood's declaration does not include all of the information required of a "written report" by an expert witness, such as a statement of "the compensation to be paid for the study and testimony in the case" and "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," Fed. R. Civ. P. 26(a)(2)(B), but Swift does not object to that shortcoming.  The court does not address these shortfalls on its own motion here.

knowledge.  *See, e.g.*, Wood Decl. ¶¶ 2, 6, 13–14.  Swift's objections cite only paragraph five,

which summarizes Ms. Wood's understanding that Swift hires drivers with very little experience,

and paragraph sixteen, which summarizes Ms. Wood's opinion that companies like Swift

regularly accommodate employees with injuries and other limitations.  This order therefore

addresses those paragraphs only.

Swift makes three objections: (1) that Ms. Wood's opinions are "conclusory allegations on

the ultimate legal issue," (2) that she does not explain the foundational rationale of her opinions,

and (3) that her opinions are unreliable and irrelevant.  *See* Evid. Objs. 9–10.  The first objection

is overruled.  "An opinion is not objectionable just because it embraces an ultimate issue," Fed.

R. Evid. 704, and the opinions in paragraphs five and sixteen are not merely allegations; they

draw on Ms. Wood's experience with Swift and similar companies.  Swift's second and third

objections rest on the same basis, challenging the reliability of Ms. Wood's methods and the

relevance of her conclusions, and may be addressed together.

An expert qualified by "knowledge, skill, experience, training, or education" may give

opinion testimony if:

> (a)    the expert's scientific, technical, or other specialized knowledge will help
>        the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the
>        case.

Fed. R. Evid. 702.  "In sum, the trial court must assure that the expert testimony 'both rests on a

reliable foundation and is relevant to the task at hand.'"  *Primiano v. Cook*, 598 F.3d 558, 564

(9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (*Daubert I*), 509 U.S.

579, 597 (1993)).  An opinion is "relevant" if it "logically advances a material aspect of the

proposing party's case."  *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*), 43 F.3d 1311, 1315

(9th Cir. 1995).  Reliability is a more difficult concept to pin down.  "[T]here are many different

kinds of experts, and many different kinds of expertise," so trial courts have "considerable

leeway" in deciding "how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 152 (1999). The Supreme Court has suggested several factors, such as testing and peer review. *See id.* at 149–50. But these factors may not be helpful when, as here, the proposed expert relies on experience rather than scientific testing. *See id.* at 151. For these types of expertise, it may be better to ask other questions, such as whether the expert's preparation "is of a kind that others in the field would recognize as acceptable." *Id.*

Ms. Wood's opinions in paragraphs five and sixteen are admissible under these rules. First, she is qualified by her experience to give those opinions. She worked in the trucking industry for several years, including as a driver on some of the same routes Ms. Tolefree drove. *See* Wood Decl. ¶¶ 1–2, 6, 14. She also has built relevant experience as the President of REAL Women in Trucking, Inc. *See id.* ¶¶ 1, 4. Second, her opinions are helpful because jurors are unlikely to understand the practical requirements of driving for a company like Swift, unlikely to know about Swift's reputation or hiring practices, and unlikely to know what accommodations might be available and reasonable for drivers with physical limitations. Third, although she does not describe her methods expressly, those methods can readily be inferred from her declaration. She drew on what she learned first-hand and what she has gathered from speaking and working with others in the industry over the years. *See id.* ¶ 16. In cases of "specialized or technical expert opinion testimony" like this one, "'reliability concerns may focus upon personal knowledge or experience.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (quoting *Kumho*, 526 U.S. at 150). Ms. Wood's knowledge and experience create a sufficiently reliable foundation under Rule 702. Swift's objections are overruled.

Having clarified the factual record by resolving objections, the court turns to a review of that record.

## II. FACTUAL BACKGROUND

The following facts are undisputed except as noted.

Ms. Tolefree is a single mother of four children and the sole provider for her family. Tolefree Decl. ¶ 1. She began working as a truck driver with C.R. England in Sacramento in late

2017.  Pl.'s Stmt. No. 1.  She drove a route for Walmart between Sacramento and Nevada.  *See id.* Nos. 5–6.  A few months after she started, she discovered she was pregnant and notified C.R. England.  *Id*. Nos. 2–3.  This was in early 2018.  *See id.*  C.R. England offered her shorter driving assignments or office work as an accommodation if it proved necessary, for example if the weather in the Sierra was bad and she would have needed to install snow chains on the truck's tires, which can require heavy exertion.  *See* Tolefree Decl. ¶¶ 5–6.

Swift acquired the Walmart contract from C.R. England in March 2018.  *See* Pl.'s Stmt. No. 4.  Ms. Tolefree successfully applied for a position with Swift driving the same route.  *Id*. Nos. 4–5.  Although everyone agrees Ms. Tolefree's job at Swift was to move freight safely from Sacramento to Nevada, *see id.* No. 6, the specifics are disputed.

According to Swift, her duties included inspecting her truck, which required her to lift the hood of her truck; loading and unloading cargo that might weigh as much as 200 pounds; coupling and uncoupling trailers, which might require pushing and pulling with up to 100 pounds of force; and preparing for hazardous weather, which might require pulling with a force of up to 150 pounds and installing and removing tire chains.  *See* Swift Truck Driver Job Description, Byrne Decl. Ex. C-1, ECF No. 15-3; Tolefree Dep. at 28–29, Byrne Decl. Ex. A, ECF No. 15-3. Swift relies primarily on its written job description for truck drivers for these requirements.  *See* Pl.'s Stmt. No. 8.  It also cites Tolefree's deposition testimony, in which she agreed she had read the written job description and had often installed tire chains and lifted the hood of her truck.  *See* Tolefree Dep. at 28–29, 38.

Ms. Tolefree would tell the jury Swift's description is misleading.  She says her job "required very little physical activity."  Tolefree Decl. ¶ 3.  She was "never required to push, pull, carry, or lift anything."  *Id*.  At the beginning of a shift, she would inspect her truck, which had already been loaded by the time she arrived.  *Id*.  The necessary inspection never required heavy lifting.  *See id.* ¶ 9.  After the inspection, she would climb into the truck, which did not require difficult lifting or climbing, drive to Nevada, wait for the truck to be unloaded, and return to Sacramento.  *Id*. ¶¶ 3, 14.  It was no different once Swift became her employer.  *See id.* ¶ 9.  She never loaded or unloaded any cargo, never coupled or uncoupled any trailers, and never exerted

any force to release her trailer. *Id.* ¶ 13.c–e. She agrees snowy winters in the Sierra might make it necessary to install tire chains, which she has done herself, but because it does not snow in the late spring and summer, she would not have installed or removed chains while she was pregnant, so that duty is irrelevant. *See id.* ¶ 13.f. Even if the weather were bad, Swift's policy and federal regulations would have permitted her to pull over and wait out the storm, at least by her understanding. *See id.*

Mr. Rose and Ms. Wood, the former supervisor and experienced driver, respectively, mentioned above, offer similar testimony. In Mr. Rose's experience, drivers on the Walmart contract, including Ms. Tolefree, did no physical labor and no heavy lifting. Rose Decl. ¶ 6. "On rare occasions," drivers might need to install chains in the winter, but "chaining tires was not required during the Spring and Summer months." *Id.* ¶ 8. He thinks Ms. Tolefree would not have needed to chain her tires during her pregnancy. *Id.* He also suggests accommodations for drivers who needed more "flexibility," such as shorter relay routes or office work. *See id.* ¶ 9. Ms. Wood has never known of any driving positions comparable to Ms. Tolefree's position at Swift that required pushing, pulling and lifting forces like those in Swift's job description. *See* Wood Decl. ¶¶ 10–11. She does not believe tire chains would have been necessary during Ms. Tolefree's pregnancy. *See id.* ¶¶ 13–14. In Ms. Wood's experience and opinion, Ms. Tolefree could have safely driven a truck for Swift on the Walmart route during her pregnancy. *See id.* ¶ 15. Also in her opinion, "starter" companies like Swift, companies that on average employ less experienced drivers, can accommodate a pregnant driver if necessary by assigning her to less strenuous work. *See id.* ¶ 16.

When she was about three months into her pregnancy, Ms. Tolefree gave Swift a note from her doctor confirming her pregnancy and estimating when she would deliver. Pl.'s Stmt. No. 11. She continued work without any problems for about two more weeks, then sent in another doctor's note that imposed a restriction: no lifting or pulling more than 20 pounds. *See id.* Nos. 12–13; Byrne Decl. Ex. C-3, ECF No. 15-3; Tolefree Dep. at 80. A few minutes after she gave her supervisor this second note, she got a call from a manager, who told her to turn her keys in immediately and not to work again until she was "one hundred percent." Tolefree Decl.

12

¶ 15.  He did not ask whether she could continue working safely and discussed no

accommodations that might permit her to keep working.  *See id.*  She understood this to mean she

could not drive while she was pregnant—no exceptions.  *See id.*  She asked another supervisor if

this was correct; she was told it was.  *Id.* ¶ 16.

For the next week, Ms. Tolefree tried unsuccessfully to contact Swift's human resources

department.  *See id.* ¶ 17.  She eventually reached someone and explained she could and would

continue driving while she was pregnant.  *See id.* ¶ 19.  She also offered to take a "relay driver"

position driving shorter routes or work in the office, as she had done at C.R. England.  *See id.*

She remembered that Swift was looking for someone to fill an office position at the time, and she

had experience in that work.  *See id.*  Her request was denied.  *Id.*  If she wanted an office job, she

would have to apply "like everybody else."  *Id.*

Meanwhile, Swift's records show it placed Ms. Tolefree on a "medical hold" or "safety

hold" the same day it received the second doctor's note.  Byrne Decl. Ex. C-4, ECF No. 15-3;

Johnson Dep. at 50–51, Byrne Decl. Ex. D, ECF No. 15-3.  As a result, she could not drive and

would receive no pay.  *See* Tolefree Decl. ¶¶ 15–18.  Without telling Ms. Tolefree, Swift then

faxed her doctor her job description—the same description Ms. Tolefree now argues is

inaccurate—along with a form asking the doctor whether, in her judgment, Ms. Tolefree could

perform the duties in the job description.  *See* Byrne Decl. Ex. D-4, ECF No. 15-3.  The faxed

version of the job description is slightly different from another version produced from Swift's

files: it excludes a paragraph claiming Swift makes "[r]easonable accommodations" for

"individuals with disabilities" so that they can "perform the essential functions" of the job.

*Compare* Byrne Decl. Ex. C-1 *with id.* Ex. D-4.  The Swift employee who was responsible for the

fax and the medical hold, Alys Johnson, could not explain that discrepancy in her deposition.  *See*

Johnson Dep. at 70–71.

Ms. Tolefree's opposition brief also claims Swift "forged" her "signature" on the form it

faxed to her doctor.  *See* Opp'n at 3 (citing Pl.'s Stmt. No. 16).  The record does not support that

claim.[3]  The faxed form does have a section marked "For Completion by the EMPLOYEE," and someone did write "Ronniesa Tolefree" in the space after "Your Name" in that section, but the form never asks for a signature, and Ms. Tolefree's signature appears nowhere on it.  *See* Byrne Decl. Ex. C-4 at 4-2.

The doctor's office sent Swift the completed form the next week.  *See id.*  It confirms her due date; the restriction against pulling, lifting or carrying more than twenty pounds; and the start and end dates of her pregnancy-related "disability," from thirty-six weeks to six weeks postpartum.  *See id.* at 4-3.  The form also asked the doctor to review the attached job description and decide whether Ms. Tolefree would be able to perform the duties on the description with an accommodation, without an accommodation or not at all.  *See id.*  Her doctor checked the box beside the third option: "No," Ms. Tolefree would be "unable to perform [her] essential job functions with or without accommodation."  *See id.*

The morning after Swift received the completed paperwork from Ms. Tolefree's doctor, Ms. Johnson emailed Ms. Tolefree and said she would be on unpaid leave until six weeks after her due date.  *See* Johnson Email (May 31, 2018, 8:58 a.m.), Byrne Decl. Ex. E-2, ECF No. 15-3.  Swift would not reassign her or create light duty assignments.  *Id.*  Ms. Johnson suggested Ms. Tolefree visit Swift's website and find an open job.  *Id.*  She listed a few openings in her email.  *See id.*  Many were so far away that they were useless to Ms. Tolefree.  *See id.* (recommending position in Fontana, California, several hours away from Sacramento by car).  By contrast, Swift has offered modified work assignments to employees with work injuries.  *See* Martinez Dep. Tr. at 53–54, ECF No. 24-7.

Ms. Tolefree responded to Ms. Johnson's email by writing that she had not given anyone permission to talk to her doctor and explained that the only restriction on her work was "weights." Tolefree Email (May 31, 2018, 11:31 a.m.), Byrne Decl Ex. E-2, ECF No. 15-3.  She told Swift not to contact her doctor again without her permission.  *Id.*  Ms. Johnson responded and reiterated the "only thing" she could do was go on an unpaid leave of absence and apply for a new job on

---

[3] The court reminds counsel of the obligation imposed on attorneys by Federal Rule of Civil Procedure 11(b)(3).

Swift's website—no driving, no light duty, no placement in an open or new position. *Id.*
Ms. Tolefree's exasperation is clear in her emails, but she was not clearly "irate and hostile," as
Swift now claims.[4] *See* Mem. at 5. She applied for one of the open positions Ms. Johnson
suggested, but after several weeks, she had received no response. Tolefree Decl. ¶ 26. She felt
she had no choice but to resign. *Id.* ¶ 29; Byrne Decl. Ex. E-3, ECF No. 15-3.

## III. PROCEDURAL HISTORY

Ms. Tolefree sued Swift in Sacramento County Superior Court the month after she
resigned. *See* Compl. at 1–2, McCalla Decl. Ex. A, ECF No. 1-2. The case was removed to this
court on the basis of the parties' diversity. Not. Removal, ECF No. 1. Ms. Tolefree makes eight
claims, all but the eighth based on the California Fair Employment and Housing Act (FEHA),
Cal. Gov't Code §§ 12940, *et seq.*: (1) gender discrimination; (2) pregnancy discrimination;
(3) disability discrimination; (4) retaliation; (5) failure to engage in the interactive process;
(6) failure to provide reasonable accommodations; (7) failure to maintain an environment free
from discrimination; and (8) wrongful termination in violation of public policy under *Tameny v.
Atlantic Richfield Co.*, 27 Cal. 3d 167, 170 (1980) ("[W]hen an employer's discharge of an
employee violates fundamental principles of public policy, the discharged employee may
maintain a tort action and recover damages traditionally available in such actions.").[5] Compl. at
6–17.

Swift now moves for summary judgment. ECF No. 15. The motion is fully briefed and
submitted. *See* Opp'n, ECF No. 24; Reply, ECF No. 25; Minutes, ECF No. 30.

## IV. LEGAL STANDARD

A court may grant summary judgment "if . . . there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
The "threshold inquiry" is whether "there are any genuine factual issues that properly can be
resolved only by a finder of fact because they may reasonably be resolved in favor of either

---

[4] *See supra* note 3.
[5] The complaint erroneously cites California Government Code §§ 12940, *et seq*. as the
legal basis of this claim.

party," or conversely "whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 251–52 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show . . . that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no genuine issue of material fact" because "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88 (citation omitted); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 587 U.S. at 587 (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

## V.    DISCUSSION

### A.    FEHA — Gender, Disability, and Pregnancy Discrimination (Claims 1–3)

The FEHA prohibits employers from subjecting their employees to adverse employment actions because of their sex, gender, disability or pregnancy. *See* Cal. Gov't Code §§ 12926(r)(1) & 12940(a). "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment," such as the theory Ms. Tolefree advances here. *Guz v. Bechtel Nat. Inc.*,

24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

"At trial, [this] test places on the plaintiff the initial burden to establish a prima facie case of discrimination." *Id.* "Generally, the plaintiff must provide evidence that (1) [she] was a member of a protected class, (2) [she] was qualified for the position [she] sought or was performing competently in the position [she] held, (3) [she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Id.* at 355.

If the plaintiff carries this burden, a presumption of discrimination forms. *Id.* To rebut the presumption, the employer must "produc[e] admissible evidence, sufficient to 'raise a genuine issue of fact' and to 'justify a judgment for the employer,' that its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 355–56 (other alternations omitted) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981)).

"If the employer sustains this burden, the presumption of discrimination disappears." *Id.* at 356. The burden then shifts back to the plaintiff to "attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* The plaintiff must "produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision." *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 278 (2013) (O'Connor, J. concurring)). Evidence supporting this determination can be circumstantial or direct. *Id.* (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003)).

On a motion for summary judgment, however, "the burden is reversed." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999)). To prevail at summary judgment on a FEHA disparate-treatment claim, the employer must show either (1) the plaintiff cannot establish an element of her claim or (2) the employer had a "legitimate nondiscriminatory reason" for the adverse employment action. *Id.*

Here, Swift concedes Ms. Tolefree is a member of a protected class, Mem. at 8, but it argues she cannot establish the remaining three elements of her prima facie case. The first is her

competence as a truck driver, or, as the state supreme court has said, that "she was able to do the job." *Green v. State of California*, 42 Cal. 4th 254, 262 (2007). In answering this question, California courts often rely on federal cases interpreting the Americans with Disabilities Act because "the FEHA is strikingly similar to the ADA." *Id.* at 262. As a result, California courts have adopted the federal-law concept of "essential functions" or "essential duties": a plaintiff who asserts a discrimination claim under the FEHA must prove she "can perform the essential duties of the employment position," with a "reasonable accommodation" if necessary. *See id.* at 264. In other words, an employee must show she is a "qualified individual." *Bates v. United States Parcel Service, Inc.*, 511 F.3d 974, 999 (9th Cir. 2007).

The ADA offers guidance on the question of "essential duties." It requires, for example, "consideration" of the "employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). A "written description" of the job is for that reason "evidence of the essential functions of the job." *Id.* But "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (9th Cir. 2000), *rev'd on other grounds,* 536 U.S. 73 (2002). A written job description is, in other words, "not conclusive" evidence of what the essential duties are. *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001). A written duty may not be essential, for example, if the employer does not require employees to perform that duty in practice. *See Bates*, 511 F.3d at 991. Federal regulations interpreting the ADA also list several other types of evidence that might show "whether a particular function is essential," including "[t]he amount of time spent on the job performing the function," the work experience of those who have the job, and "the consequences of not requiring [an employee] to perform the function." 29 C.F.R. § 1630.2(n)(3). In short, determining "essential job functions is generally a question of fact." *Weeks v. Union Pac. R. Co.*, 137 F. Supp. 3d 1204, 1223 (E.D. Cal. 2015). And if that question is unresolved, summary judgment cannot be granted. *See, e.g.*, *Bates*, 511 F.3d at 991 (citing *Taylor v. Rice*, 451 F.3d 898, 907 (D.C. Cir. 2006)).

/////

Here, many factual uncertainties about the essential functions of Ms. Tolefree's job preclude summary judgment. As summarized above, Swift's written job description requires drivers to load and unload heavy cargo, couple and uncouple trailers using up to one hundred pounds of force, and prepare truck tires for hazardous weather, which might demand more than one hundred pounds of pulling force. *See supra* section II at 11. But Ms. Tolefree has pointed to contradictory evidence. She avers she was never required to push or pull or lift with such force. *See id.* at 11–12. She never loaded or unloaded any cargo, never coupled or uncoupled any trailers, and never exerted any force to release her trailer. *See id.* Mr. Rose agrees that drivers on the Walmart contract never exert themselves as Swift argues they must, and in Ms. Wood's experience, it would be unprecedented in the industry if they did. *See id.* Ms. Tolefree, Mr. Rose and Ms. Wood each would also testify that snow chains would likely have been unnecessary during Ms. Tolefree's pregnancy. *See id.* A jury could credit that testimony and find that Swift's written job description was inaccurate. As a result, Swift has not established that Ms. Tolefree could not perform her essential duties.

An adverse employment action is the next element in Ms. Tolefree's prima facie case. *See Guz*, 24 Cal. 4th at 355. Swift claims she suffered no adverse employment action because she resigned. *See* Mot. at 3. This argument has two flaws.

First, it ignores the California Supreme Court's holding that adverse employment actions include any action that "materially affects the terms, conditions, or privileges of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1051 (2005). Here, a factfinder could reasonably conclude that Swift put Ms. Tolefree on a months-long unpaid leave of absence soon after learning she was pregnant. It would then be reasonable to conclude that a long, unpaid leave of absence "materially affected" the terms of Ms. Tolefree's employment and was thus an adverse employment action. Swift does not show otherwise by calling the leave of absence an accommodation. *See* Mem. at 9. Under California regulations, "[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that employee to take a leave of absence." Cal. Code Regs. tit. 2 § 11068(c); *see also Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1096–97 (E.D. Cal. 2017) (finding leave

1  inappropriate where plaintiff was still capable of performing duties of her position, albeit from
2  different location).

3       Second, a reasonable factfinder could conclude Ms. Tolefree was constructively
4  discharged.  The doctrine of constructive discharge "transforms what is ostensibly a resignation
5  into a firing." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994).  "In order to
6  establish a constructive discharge, an employee must plead and prove . . . that the employer either
7  intentionally created or knowingly permitted working conditions that were so intolerable or
8  aggravated at the time of the employee's resignation that a reasonable employer would realize
9  that a reasonable person in the employee's position would be compelled to resign." *Id.*  These
10  conditions "must be sufficiently extraordinary and egregious to overcome the normal motivation
11  of a competent, diligent, and reasonable employee to remain on the job." *Id.* at 1246.  Here, when
12  the evidence is viewed in the light most favorable to Ms. Tolefree's case, it could permit the
13  conclusion that her work environment became intolerable.  As summarized above, a jury could
14  find that soon after Swift learned Ms. Tolefree was pregnant, it took away her keys, stopped
15  giving her work, delayed responses to her calls, stopped paying her, refused her proposed
16  accommodations out of hand, spoke to her doctor without telling her, sent her doctor an
17  inaccurate job description that inexplicably omitted a paragraph that mentioned the possibility of
18  reasonable accommodations and ignored her application for another open position.  *See supra*
19  section II at 13–15.  The sole provider for a family of four children could reasonably find these
20  conditions intolerable and feel as though she had no choice but to resign.

21       The final disputed element of Ms. Tolefree's prima facie case requires her to prove at trial
22  that the circumstances of her termination suggest discriminatory intent.  *See Guz*, 24 Cal. 4th at
23  355.  Swift has not shown Ms. Tolefree cannot prove this element at trial.  Its refusal to discuss
24  any accommodation other than a months-long unpaid leave of absence suggests that her
25  pregnancy was the reason for its decision, not her ability to do her job.  Swift has also given
26  modified duties to injured employees, but not to pregnant employees.  *See supra* section II
27  at 12–13.
28  /////

Swift argues it was not required to transfer Ms. Tolefree to another position or create a new position for her, but that argument misreads the statute on which it relies. *See* Mem. at 8 (citing Cal. Gov't Code § 12945(a)(3)(C)). The provision it cites requires a transfer only if the employee requests a transfer.[6] Ms. Tolefree does not allege a transfer request was denied; her primary contention is that she was still capable of performing the tasks required by her position as a truck driver with only minor accommodations, if any. Compl. ¶ 10; Tolefree Decl. ¶ 19. Nor does she contend that Swift should have created a new position for her; she points out that Swift has considered modified work assignments for employees with disabilities unrelated to pregnancy as evidence of a discriminatory motive, and she would testify that Swift had an open position she could fill. *See* Tolefree Decl. ¶ 19.

Swift could also prevail on summary judgment if it had proof beyond dispute that it had a legitimate nondiscriminatory reason for the adverse employment action. *See Dep't of Fair Emp't*, 642 F.3d at 745. It argues its decision was indisputably nondiscriminatory because it did not put Ms. Tolefree on leave immediately after receiving the first note from her doctor, but rather only after the second, which included a weight restriction. *See* Mem. at 8. That is one reasonable interpretation of the evidence. Another reasonable interpretation, however, supports Ms. Tolefree's claim: Swift waited because it was searching for a pretext, and it found one in the second doctor's note, namely her weight restriction. This interpretation is reasonable, as explained above, because a jury could agree with Ms. Tolefree that her job did not actually require any heavy lifting, pulling or exertion.

The court denies summary judgment of the gender, disability, and pregnancy discrimination claims.

---

[6] California Government Code section 12945 provides, in pertinent part, that it is an "unlawful employment practice" "[f]or an employer to refuse to temporarily transfer a pregnant employee to a less strenuous or hazardous position for the duration of the pregnancy if the employee so requests, with the advice of the employee's physician, where that transfer can be reasonably accommodated." Cal. Gov't Code 12945(a)(3)(C). But an employer is not required "to create additional employment that the employer would not otherwise have created, nor shall the employer be required to discharge any employee, transfer any employee with more seniority, or promote any employee who is not qualified to perform the job." *Id.*

**B. FEHA — Retaliation (Claim 4)**

Under the FEHA, an employer may not "retaliate or otherwise discriminate against a person for requesting accommodation . . . , regardless of whether the request was granted." Cal. Gov't Code § 12940(*l*)(4); *see also Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 245–46 (2016) (recognizing retaliation claim based on request for reasonable accommodations). To establish a prima facie case of retaliation under the FEHA, a plaintiff must show: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Yanowitz*, 36 Cal.4th at 1042.

Here, a jury could find Swift constructively terminated Ms. Tolefree's employment soon after she asked for an accommodation that would permit her to continue working as a truck driver while she was pregnant and relied on an inaccurate job description to do so. Swift does not address this evidence or explain why section 12940(*l*)(4) is inapplicable. *See* Mem. at 10; Reply at 7. Accordingly, the court denies summary judgment as to the retaliation claim.

**C. FEHA — Failure to Engage in the Interactive Process (Claim 5)**

The FEHA requires employers to engage in a "timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation . . . ." Cal. Gov't Code § 12940(n). Ultimately, "[t]o prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." *Nealy v. City of Santa Monica*, 234 Cal. App.4th 359, 379 (2015).

A factfinder could conclude on this record that soon after learning of Ms. Tolefree's condition, Swift placed her on a "safety hold" and unpaid leave. *See* Pl.'s Stmt. No. 15. The record could therefore support her claim that Swift unilaterally presented her with a stark choice without any sort of interactive process: go on leave or apply to other jobs within the company. *See* Opp'n at 17. Ms. Tolefree has also proposed accommodations, as required, which a factfinder could agree were reasonable: (1) allowances for lighter duty or shorter routes in the event of bad weather; or (2) an assignment to a current open position in an office setting. *See id.*

She is also prepared to testify essentially that she could do her job without any accommodations and that this would have been clear to Swift if it had undertaken any interactive process. Thus, the court denies summary judgment on this claim.

**D.     FEHA — Failure to Provide Reasonable Accommodations (Claim 6)**

The FEHA requires employers to "make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov't Code § 12940(m)(1). California regulations provide that "[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that employee to take a leave of absence." Cal. Code Regs. tit. 2, § 11068(c); *see also Ravel*, 228 F. Supp. 3d at 1096 (finding leave inappropriate where plaintiff was still capable of performing duties of her position, but from different location).

Swift contends the unpaid leave of absence it offered was a reasonable accommodation. *See* Mem. at 11; Reply at 8. As explained above, however, a jury must decide what plaintiff's job actually entailed and whether she required any accommodation to perform it. Construing the evidence in the light most favorable to plaintiff, significant testimonial evidence supports her argument she could have performed the essential functions of her job as a truck driver even without any accommodation and that alternatives to an unpaid leave might have been reasonable. *See supra* section II at 11–13. This dispute precludes summary judgment of this claim

**E.     FEHA — Failure to Take Reasonable Steps Under FEHA to Prevent Discrimination and Harassment (Claim 7)**

The FEHA requires employers "to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). As Ms. Tolefree clarified at hearing, her claim rests on alleged discrimination, not harassment. *See* Compl. ¶¶ 93–94. Such a claim requires a plaintiff to show (1) she was discriminated against, (2) the employer failed to take all reasonable steps to prevent discrimination, and (3) that failure caused injury to the plaintiff. *Viloria v. Adams & Assocs., Inc.*, No. 16 -00314, 2017 WL 4422363, at *7 (E.D. Cal. Oct. 5, 2017) (citing *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015)). "The employer's duty to prevent discrimination is affirmative and mandatory." *Northrop*

23

*Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002). Courts have considered such claims to be "essentially derivative of a discrimination claim." *See Achal*, 114 F. Supp. 3d at 804; *see also Viloria*, 2017 WL 4422363, at *8.

As discussed above with respect to the discrimination claims, there is a genuine dispute whether Swift's actions were discriminatory. The record would also permit a reasonable factfinder to conclude that Ms. Johnson, the employee ostensibly responsible for policing discriminatory practices for Swift, knew about the discriminatory effect of Swift's policies. *See generally* Byrne Decl. Ex. E-2. Therefore, a reasonable factfinder could impute knowledge of discrimination to Swift. *See Achal*, 114 F. Supp. 3d at 804–05 (imputing knowledge of discrimination to organization where human resources director had actual knowledge). Finally, Ms. Tolefree could establish injury by establishing her constructive discharge, among other harms.

The court denies summary judgment on this claim.

### F. Wrongful Termination in Violation of Public Policy (Claim 8)

"An employer may not discharge an at will employee for a reason that violates fundamental public policy." *Keshe v. CVS Pharmacy Inc.*, No. 14-08418, 2016 WL 1367702, *4 (C.D. Cal. Apr. 5, 2016) (quoting *Stevenson v. Super. Ct. of Los Angeles Cty.*, 16 Cal. 4th 880, 887 (1997)). A claim for termination in violation of public policy is commonly called a *Tameny* claim after *Tameny v. Atlantic Richfield Co.*, *supra*. A successful FEHA discrimination claim supports a "derivative" claim of wrongful termination in violation of public policy. *Viloria*, 2017 WL 4422363, at *6 (citing *Ayala*, 263 F. Supp. 3d at 913); *see also Rojo v. Kliger*, 52 Cal. 3d 65, 70–71 (1990) ("[S]ex discrimination in employment may support a claim of tortious discharge in contravention of public policy."). Because the court has denied summary judgment for the discrimination claims, this derivative claim also necessarily survives.

Defendant's motion for summary judgment on this claim is denied.

### G. Punitive Damages

Under California law, for a plaintiff to succeed on a claim of punitive damages, she must prove by "clear and convincing evidence" that the defendant is "guilty of oppression, fraud, or

malice." Cal. Civil Code § 3294(a). Ms. Tolefree does not point to any evidence as independent proof of "oppression, fraud or malice" but argues that "[d]iscrimination is in and of itself fraudulent, malicious, oppressive, or done with conscious disregard as to plaintiffs rights." Opp'n at 19–20 (citing *Cloud v. Casey*, 76 Cal. App. 4th 895, 912 (1999)). In *Cloud*, the evidence permitted a finding not only that defendants had discriminated on the basis of gender, but also that they had "attempted to hide the illegal reason for their decision with a false explanation." 76 Cal. App. 4th at 912. When an employer does not attempt to hide the discriminatory reason for its action, "oppression, fraud, or malice" are not automatically present; rather some additional evidence of wrongful conduct is needed. *See Scott v. Phoenix Schools, Inc.*, 175 Cal. App. 4th 702, 716–17 (2009) ("The only evidence of wrongful conduct directed toward Scott was her termination for an improper reason. . . . There was no evidence Phoenix attempted to hide the reason it terminated [her].").

Plaintiff's reliance on *Cloud* alone, without providing any independent evidence, means there is no basis for a jury to find "oppression, fraud or malice." *See* Opp'n at 19–20. The court grants defendant's motion with respect to punitive damages.

## VI. CONCLUSION

The motion for summary judgment is **granted in part as to the request for punitive damages**. The motion is otherwise **denied**.

A Status Conference re: Trial Setting is scheduled for **July 8, 2021, at 2:30 p.m.** No later than fourteen days before that conference, the parties shall meet and confer and file a joint statement informing the court (1) whether any party objects to referral to a settlement conference before the assigned magistrate judge or another judge of this court, and (2) if any party has demanded a jury trial, whether the parties stipulate to withdrawing that demand and conducting a bench trial.

This order resolves ECF No. 15.

IT IS SO ORDERED.

DATED: May 26, 2021.

CHIEF UNITED STATES DISTRICT JUDGE